UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:18-cv-112

VIACOM INTERNATIONAL INC.,

       Plaintiff,

v.

MARK ANTHONY BACA AND GUARDIAN
ANTI-BULLYING CAMPAIGN, INC.,

       Defendants.

_____

**COMPLAINT**

Plaintiff Viacom International Inc. ("Viacom"), by and through its undersigned counsel, Jenner & Block LLP, brings this action against defendants Mark Anthony Baca and Guardian Anti-Bullying Campaign, Inc. (collectively, "Defendants") for injunctive relief and money damages. Viacom alleges as follows:

**NATURE OF THE ACTION**

1. This case involves the ongoing and willful infringement by Defendants, through their "Ninja Turtles Live Action Parody" show and related marketing, advertising, and other infringing conduct (the "Show"), of Viacom's copyrights and trademarks in the famous *Teenage Mutant Ninja Turtles* ("Ninja Turtles") media franchise (the "Authorized Franchise"), which includes, *inter alia*, television series, films, video games, toys, and other merchandise.

2. Over the past few years, Defendants have repeatedly promised to cease their infringement on repeated requests by Viacom. Yet, to this day, Defendants continue to infringe Viacom's intellectual property rights, notwithstanding their numerous acknowledgements of wrongdoing and representations that they will cease exploiting Viacom's intellectual property.

3. After repeated demands from Viacom that they cease their infringing conduct, Defendants acknowledged their infringement in January 2017 and agreed to cease that conduct.  In fact, they continued to infringe Viacom's copyrights and trademarks, including by performing the Show.

4. In January 2018, Viacom contacted Defendants once again, and Defendants once again acknowledged their wrongdoing and agreed to cease their infringement.

5. Nevertheless, the very next day, Defendants performed the infringing Show and continue to perform the Show to this day.

6. The Show knowingly and willfully makes use of Viacom's well-established and famous trademarks and copyrights in the celebrated Ninja Turtles television series, comic books and merchandise, and the characters developed therein.

7. Defendants do not have a license or other form of authorization from Viacom to make use of any of Viacom's copyrights or trademarks in any way.

8. As a result of the foregoing, Defendants are liable for copyright infringement under 17 U.S.C. § 501, trademark infringement under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), trademark dilution under N.M. Stat. Ann. § 57-3B-15, trademark infringement under New Mexico common law, and violation of the New Mexico Unfair Practices Act under N.M. Stat. Ann. § 57-12-1, *et seq*.

9. Defendants' continued and persistent infringement, particularly following acknowledgement of their infringing conduct and empty claims that they would cease infringing, is flagrant, knowing, and willful.

10. Defendants' continued defiance of Viacom's intellectual property rights and goodwill leave Viacom no choice but to bring the instant lawsuit.

11. The harm by Defendants to Viacom, which has invested millions of dollars and enormous amounts of time and creative energy to produce and exploit the copyrights and trademarks at issue in this lawsuit, is both manifest and irreparable.

## THE PARTIES

12. Plaintiff Viacom is a Delaware corporation with its principal place of business in New York, New York.

13. Upon information and belief, Defendant Mark Anthony Baca is an individual residing at 113 La Salle Drive, Clovis, New Mexico 88101.

14. Upon information and belief, Defendant Guardian Anti-Bullying Campaign, Inc. ("GABC") is an Oklahoma not-for-profit corporation with its principal place of business in New Mexico.

15. Mr. Baca is an officer, trustee, and/or director of GABC.

## JURISDICTION AND VENUE

16. This is a civil action seeking injunctive relief and damages for copyright infringement under the Copyright Act, 17 U.S.C. § 501, *et seq.*, and trademark infringement under the Lanham Act, 15 U.S.C. § 1125.

17. This Court thus has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338.

18. This Court has subject-matter jurisdiction over state-law claims under 28 U.S.C. §§ 1338(b) and 1367.

19. This Court has personal jurisdiction over Defendant Mark Anthony Baca because, upon information and belief, he resides in this state.

20. This Court has personal jurisdiction over Defendant GABC because, upon information and belief, it is headquartered and conducts business operations in this state.

21. This Court also has personal jurisdiction over both Defendants under N.M. Stat. Ann. § 38-1-16 because, upon information and belief, the causes of action arise from Defendants' transacting business within the state in the form of their infringing Shows and their business activities related to the Shows.  In addition, upon information and belief, Defendants directly or indirectly advertise and perform the infringing Shows to consumers located within this state, thereby committing tortious acts within this state.

22. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(a).

## PLAINTIFF AND ITS INTELLECTUAL PROPERTY

23. Viacom is home to premier global media brands that create compelling entertainment content—including television programs, motion pictures, short-form content, games, consumer products, podcasts, live events, and social media experiences—for audiences in more than 180 countries on various platforms and devices.  Viacom has invested and continues to invest millions of dollars annually to create and disseminate these works, knowing that the Copyright Act and Lanham Act protect its economic incentive to do so, and that millions of consumers desire to experience their creative work.

24. Viacom's program services reach approximately 4.3 billion cumulative television subscribers in 183 countries and 43 languages, via 300 locally programmed and operated television channels, including Nickelodeon®, Nick Jr.®, MTV®, BET®, Comedy Central®, Paramount Network™, VH1®, TV Land®, CMT®, Logo® and program services created specifically for international audiences, such as British public service broadcaster ("PSB") Channel 5® (in the

United Kingdom ("UK")), Telefe® (in Argentina), Colors® (in India) and Paramount Channel™ (in a variety of territories).

25. The Ninja Turtles characters are a group of adolescent anthropomorphic turtles who are named after Renaissance artists and are trained in ninjutsu to fight crime.  Since their debut over thirty years ago, they have been enormously popular and successful across the world.

26. The well-known, unique, and widely identifiable Ninja Turtles characters first appeared in 1984 in a comic book published by Mirage Studios ("Mirage").  An animated television series and merchandise, including action figures, followed shortly thereafter.  The original television series, *Teenage Mutant Ninja Turtles*, ran from 1987 until 1996.  A reboot of the television series premiered in 2003 and ran through 2009.

27. The first of several live action feature films was released in 1990 and, due to its success, sequels followed in 1991 and 1993.

28. In 2009, Viacom purchased all of Mirage's rights to the Ninja Turtles with Mirage retaining only limited rights to exploit certain elements of the Ninja Turtles franchise for limited purposes.

29. Since acquiring the Ninja Turtles franchise, Viacom has invested enormous sums of money, time, and resources into the development and marketing of the Ninja Turtles property.

30. For example, Nickelodeon, a network owned and operated by Viacom through its Viacom Media Networks division, released an animated television series called *Teenage Mutant Ninja Turtles*, which ran from 2012 through 2017.

31. Another animated television series based on the Ninja Turtles, entitled *Rise of the Teenage Mutant Ninja Turtles*, is in development and will premiere on Nickelodeon in 2018.

32. Paramount Pictures (an affiliate of Viacom) and Nickelodeon Movies have also released two feature films—*Teenage Mutant Ninja Turtles* and *Teenage Mutant Ninja Turtles: Out of the Shadows*—based on the Ninja Turtles.

33. Plaintiff is the owner of a number of copyrights related to the Ninja Turtles (the "Ninja Turtles Copyrighted Material"), and those upon which this action is based are registered with the U.S. Copyright Office.

34.  The design, configuration, conceptual qualities, and distinctive features of the Ninja Turtles Copyrighted Material, including the delineated Ninja Turtles characters, are wholly original and, as fixed in various tangible media, including, without limitation,  audiovisual works, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*

35. Products, including television series, motion pictures, comic books, and merchandise, featuring the Ninja Turtles Copyrighted Material that are produced, sold, and distributed by Viacom or under its authority have been produced, sold, and distributed in conformity with the provisions of the copyright laws.  Viacom and those acting under its authority have complied with their obligations under the copyright laws and Viacom is the sole proprietor or otherwise authorized to enforce all right, title, and interest in and to the copyrights in the Ninja Turtles Copyrighted Material.

36. Viacom is also the owner of registered and unregistered trademarks related to the Ninja Turtles (the "Ninja Turtles Trademarks").  (The Ninja Turtles Copyrighted Material and the Ninja Turtles Trademarks are collectively referred to as the "Ninja Turtles Properties.")

37. The federal registrations for the Ninja Turtles Trademarks are in full force and effect, and many are incontestable.

38. Viacom and prior to the 2009 acquisition, its predecessor in interest Mirage, have continuously used the Ninja Turtles Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

39. Viacom has licensed the Ninja Turtles Trademarks on and in connection with the sale and advertising of a wide variety of goods.  Currently, Viacom has numerous active license agreements throughout the United States and the world, providing for the authorized use of the Ninja Turtles Trademarks on products and in connection with services.

40. As a result of their widespread use, the Ninja Turtles Trademarks have become a symbol of Viacom.

41. The Ninja Turtles Trademarks have come to be known as source identifiers for high-quality, authentic Viacom-licensed consumer products.

42. The Ninja Turtles Trademarks are distinctive.

43. The Ninja Turtles Trademarks are famous within the meaning of 15 U.S.C. § 1125(c).

44. The revenue from products sold in the United States which use the Ninja Turtles Properties is substantial.

## DEFENDANTS' UNLAWFUL CONDUCT

45. Defendants' Show is based on the Ninja Turtles and makes frequent use of Viacom's Ninja Turtles Properties without authorization.

46. First, the characters in the Show have the exact same names as Viacom's protected characters—Leonardo, Raphael, Michelangelo, Donatello, Splinter, Shredder, and Shredder's Foot Clan.

47. Second, at least one of the Shows depicts all four Ninja Turtles meeting with their rat sensei and adoptive father, Splinter.  The infringing Ninja Turtles engage in martial-arts battles

with Shredder and his Foot Clan—the well-known villains of the Ninja Turtles universe.  These plot points mimic those that frequently appear in the authorized Ninja Turtles storylines.

48. Third, the Show improperly makes use of the Ninja Turtles' distinctive costumes.  For example, in the Show, each infringing Ninja Turtle is depicted in similar garb and wearing a bandana over the eyes in the color for which the character is known (orange for Michelangelo, red for Raphael, etc.), identical to Viacom's Ninja Turtles characters.

49. Fourth, the infringing Ninja Turtles characters in the Show also act in accordance with their well-recognized personality traits, such as Donatello behaving in line with his role as the most intelligent Ninja Turtle and Raphael coping with anger management issues.  In the Show, the characters interact with one another and engage in the same activities as the Ninja Turtles in the authorized television series, films, and comic books, including performing martial-arts moves and fighting crime.

50. Fifth, at least two of the Shows made use of the unique catchphrases of Viacom's Ninja Turtles characters, such as "cowabunga," "turtle power," and "go, ninja, go."

51. For all of these reasons and others, the Show is improperly infringing and profiting from Viacom's Ninja Turtles intellectual property and falsely suggesting an endorsement by, or affiliation with, Viacom.

52. The Show is not a parody.  Upon information and belief, the Show provides no meaningful commentary upon, or criticism of, the Ninja Turtles.  Additionally, the Ninja Turtles characters are portrayed without any irony or self-awareness that would suggest a parodic element to the Show.  Rather, as set forth above, the Show is a copy of the Authorized Franchise, featuring the unauthorized copying of names, costumes, plot, catchphrases, and storyline.  For example,

upon information and belief, the Ninja Turtles characters in the Show offer autographs to children attendees, conveying that they are the real and authorized characters.

53. Upon information and belief, despite the fact that the Show is billed as having an anti-bullying message, bullying is not the focus of the Show. At bottom, the Show is centered on Viacom's Ninja Turtles Properties, which Defendants have no authorization to use.

54. In contrast with Viacom's high-quality and professional television series and merchandise, upon information and belief, the Show, although a copy of Viacom's Ninja Turtles Properties, is an amateur production with nonprofessional actors.

55. When Viacom first learned of Defendants' infringing conduct, Viacom contacted Defendants on or before August 2015 to request that they cease and desist all use of Viacom's Ninja Turtles Properties.

56. Viacom was forced to contact Defendants again in November 2016 when it learned that Defendants were continuing to infringe Viacom's Ninja Turtles Properties.  In January 2017, Defendants agreed to cease infringement.  Attached as **Exhibit 1** is a true and correct copy of correspondence between Viacom and Mr. Baca, dated from November 2016 through January 2017.

57. However, thereafter, Defendants began to market and perform the same Show once again, despite being well aware that the Show infringed upon Viacom's copyrights and trademarks, and knowing that Viacom did not authorize and, in fact, opposed such use of its copyrights and trademarks and had demanded cessation of use.

58. Viacom has recently learned that, in 2017, Defendants marketed and/or performed the Show in New Mexico and throughout the United States multiple times, all with unauthorized use of Viacom's intellectual property.

59. On January 8, 2018, upon learning of an upcoming group of Shows, Viacom once again contacted Defendants by sending a cease-and-desist letter, demanding once again that Defendants immediately cease any and all unauthorized use of Ninja Turtles Properties.  Attached as **Exhibit 2** is a true and correct copy of the cease-and-desist letter sent on January 8, 2018.

60. Defendants failed to respond to Viacom's cease–and-desist letter, and they continued to flagrantly infringe Viacom's Ninja Turtles Properties.

61. Viacom's attorney finally reached Mr. Baca by telephone on January 17, 2018.  Mr. Baca acknowledged his infringement and agreed to cease his infringing conduct and cancel upcoming Shows.

62. Mr. Baca then sent an email in which he agreed that he would cease performances of the Show as long as he could complete the remaining scheduled performances.  Attached as **Exhibit 3** is a true and correct copy of an email from Mr. Baca dated January 17, 2018.

63. On January 18, 2018, Viacom's attorney spoke with Mr. Baca and made clear that all infringement, including any upcoming Shows, must cease immediately.  Mr. Baca agreed to cease use of the Ninja Turtles Properties, but stated that he may perform the Show without the Properties.

64. Nevertheless, upon information and belief, Defendants performed an infringing Show that very same evening, January 18, 2018 and again on January 21, 2018.

65. Moreover, Defendants are currently marketing performances throughout the United States, including but not limited to February 9, 2018 in Huntington, West Virginia; on February 17, 2018 in Kingman, Arizona; on March 29, 2018 in Pikeville, Kentucky; and on April 5, 2018 in Roanoke, Virginia.  A true and correct copy of the schedule of Defendants' upcoming performances as viewed on January 31, 2018, available at https://www.ticketor.com/jam-entertainment-live/, is attached hereto as **Exhibit 4**.

66. In addition, Defendants continue to advertise the Show using Viacom's Ninja Turtles Properties without authorization.  For example, Defendants' two Facebook pages feature images of the Ninja Turtles.  A true and correct copy of Defendants' Guardian Anti-Bullying Campaign, Inc. Facebook page, available at https://www.facebook.com/GuardianAntiBullyingCampaignInc/, as viewed on January 19, 2018, is attached hereto as **Exhibit 5**.  A true and correct copy of Defendants' Turtle Live Actions Parody Facebook page, available at https://www.facebook.com/TurtlesLiveActionParody/, as viewed on January 19, 2018, is attached hereto as **Exhibit 6**.

67. Defendants sell general-admissions tickets to the Show for $10–12 per person.  A $25 per person ticket includes an additional "Meet & Greet," which entitles ticketholders to meet actors dressed up as the Ninja Turtles characters, who are available for photographs and autographs. Upon information and belief, the actors pose for the photographs and sign the autographs as the Ninja Turtles characters.  VIP tickets to the Show are also available for $50 per person, and VIP ticketholders are entitled to attend the Meet & Greet, receive an 8 x 10 photograph and VIP badge, are entered into a special raffle, and receive select seating at the Show.

68. Defendants sell Ninja Turtles merchandise at the Show, further suggesting an affiliation with Viacom.

69. Upon information and belief, Defendants perform the Show to audiences of hundreds of people.  Indeed, Defendants have admitted that thousands attended their earlier Shows and hundreds currently do.  *See* **Exhibit 3**.

70. Upon information and belief, Defendants have profited from the Show and its use of Viacom's Ninja Turtles Properties.

71. Defendants' misuse of the Ninja Turtles Properties in connection with the unauthorized Show has injured Viacom's reputation and goodwill and ability to further exploit its Properties. There is a likelihood that consumers will be confused as to the source or sponsorship of Defendants' Show and that they will believe that it is affiliated with Viacom.

72. Viacom has tried repeatedly to stop Defendants' infringement and resolve this matter without resorting to the courts. And yet, time again, Defendants have committed to cease their unlawful conduct, only to turn around and continue to engage in flagrant, knowing, and willful infringement. Defendants have left Viacom with no choice but to bring the instant suit.

73. Unless enjoined, Defendants' willful conduct will continue to injure both Viacom and the public.

**FIRST CAUSE OF ACTION**

**Copyright Infringement, 17 U.S.C. § 501**

74. Viacom repeats and realleges every allegation contained in paragraphs 1 through 73 as if fully set forth.

75. By using Viacom's Ninja Turtles Copyrighted Material without authorization and featuring it in the Show, Defendants are engaging in the unauthorized reproduction of, and public performance of, the Ninja Turtles Copyrighted Material in violation of 17 U.S.C. §§ 106 and 501.

76. Defendants are also making derivative works based upon the Ninja Turtles Copyrighted Material in violation of 17 U.S.C. §§ 106 and 501.

77. Viacom has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to a number of copyrights comprising the Ninja Turtles Copyrighted Material.

78. A representative list of Viacom's relevant copyright registrations for and copyright assignments related to the Ninja Turtles Copyrighted Material is attached hereto as **Exhibit 7**.

79. Defendants' infringement of Viacom's copyrights includes but is not limited to Viacom's copyrights listed in **Exhibit 7** attached hereto.

80. Defendants' acts of infringement are knowing, willful, and intentional, in disregard of or indifferent to Viacom's rights.

81. Defendants have obtained gain, profits, and advantages as a result of their wrongful acts as set forth herein.

82. The infringement of Plaintiff's rights in each of its copyrighted works constitutes a separate and distinct act of infringement.

83. As a direct and proximate result of Defendants' infringement of Viacom's copyrights and exclusive rights under copyright, Viacom has been harmed and is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Viacom's election, pursuant to 17 U.S.C. § 504(b), Viacom is entitled to its actual damages, including Defendants' profits from the infringement, as will be proven at trial.

84. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages.  The threatened harm to Viacom outweighs whatever cognizable harm the requested relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction weighs in Viacom's favor.  Accordingly, Viacom is entitled to a permanent injunction prohibiting infringement of Viacom's copyrights and exclusive rights under copyright pursuant to 17 U.S.C. § 502.

85. Viacom is entitled to its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

86. Viacom is further entitled to impoundment and destruction or other reasonable disposition of infringing copies of Viacom's copyrights pursuant to 17 U.S.C. § 503.

## SECOND CAUSE OF ACTION

## Federal Trademark Infringement, 15 U.S.C. § 1125(a)

87. Viacom repeats and realleges every allegation contained in paragraphs 1 through 86 as if fully set forth.

88. Viacom is the owner of world-famous Ninja Turtles Trademarks which serve to distinguish Viacom's products.  Each year, Viacom spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high-quality products.

89. Viacom, or those under its authority, produce and distribute all of its advertising and products in conformity with the provisions of the U.S. trademark laws.

90. The Ninja Turtles Trademarks are distinctive and are associated in the mind of the public with Viacom.

91. Based on Viacom's extensive advertising, sales, and the popularity of its own products, the Ninja Turtles Trademarks have acquired secondary meaning so that the public associates these trademarks exclusively with Viacom.

92. Notwithstanding Viacom's well-known and prior common law and statutory rights in the Ninja Turtles Trademarks, Defendants have, with actual and constructive notice of Viacom's federal registration rights and long after Viacom established its rights, adopted and used unauthorized reproductions of one or more of the Ninja Turtles Trademarks in connection with the

advertising, sale, offering for sale, and/or distribution of goods in the State of New Mexico and in interstate commerce for their own financial gain.

93. Viacom has not authorized Defendants' use of any of its trademarks.

94. A representative list of relevant trademark registrations related to the Ninja Turtles Trademarks is attached hereto as **Exhibit 8**.

95. Defendants' infringement of the Ninja Turtles Trademarks includes but is not limited to Viacom's trademarks listed in **Exhibit 8** attached hereto.

96. Defendants' unauthorized use of the Ninja Turtles Trademarks on or in connection with the Show constitutes the use of Viacom's registered marks in commerce.

97. Defendants' unauthorized use of the Ninja Turtles Trademarks on or in connection with the Show is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Viacom, or as to the origin, sponsorship, or approval of the Show by Viacom in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1125(a).

98. Indeed, there is added likely confusion here, given the fact that Viacom has recently licensed use of the Ninja Turtles characters in connection with anti-bullying initiatives, making the infringement particularly problematic.

99. Defendants' unauthorized use of the Ninja Turtles Trademarks has resulted in Defendants unfairly and illegally benefitting from Viacom's goodwill.

100. Defendants' infringement of Viacom's registered Ninja Turtles Trademarks is willful, deliberate, and in bad faith, and has caused Viacom harm.

101. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages.  The threatened harm to Viacom outweighs whatever cognizable harm the requested

relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction weighs in Viacom's favor.  Accordingly, Viacom is entitled to a permanent injunction prohibiting infringement of Viacom's trademarks pursuant to 15 U.S.C. § 1116.

102. Due to Defendants' violations of the Lanham Act, Viacom is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**

**Federal Trademark Dilution, 15 U.S.C. § 1125(c)**

103. Viacom repeats and realleges every allegation contained in paragraphs 1 through 102 as if fully set forth.

104. Defendants' unauthorized use of the Ninja Turtles Trademarks is likely to cause dilution by blurring the exclusive association consumers have when exposed to the Ninja Turtles Trademarks, that is, consumer identification of the Ninja Turtles Trademarks as originating from a single source, namely Viacom.

105. Moreover, because the Show is amateur and low-quality, Defendants' unauthorized use of the Ninja Turtles Trademarks in the Show is likely to cause dilution by tarnishing the reputation that Viacom has built up and enjoys in its Authorized Franchise, namely, its high-quality, professional television series, and merchandise marketed and disseminated under the Ninja Turtles Trademarks.

106. Viacom is the exclusive owner of the Ninja Turtles Trademarks.

107. The Ninja Turtles Trademarks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

108. Viacom's distinctive Ninja Turtles Trademarks play a prominent role in its marketing and advertising and the popularity of its products across many different media.

109. The Ninja Turtles Trademarks were famous long before Defendants began using unauthorized reproductions, counterfeits, copies, and colorable imitations in their unauthorized Show.

110. The Ninja Turtles Trademarks have gained widespread publicity and public recognition in New Mexico and elsewhere.

111. Performance of Defendants' Show that uses the Ninja Turtles Trademarks constitutes use in commerce of the Ninja Turtles Trademarks.

112. Viacom has not licensed or otherwise authorized Defendants' use of the Ninja Turtles Trademarks.

113. The acts and conduct of Defendants complained of herein constitute dilution by blurring and dilution by tarnishment in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

114. Defendants' acts of dilution by blurring and tarnishment are willful, deliberate, and in bad faith, and have caused Viacom harm.

115. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages. The threatened harm to Viacom outweighs whatever cognizable harm the requested relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction weighs in Viacom's favor. Accordingly, Viacom is entitled to a permanent injunction prohibiting dilution of Viacom's trademarks pursuant to 15 U.S.C. § 1125(c)(1).

116. Due to Defendants' violations of the Lanham Act, Viacom is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION

### New Mexico Common Law Trademark Infringement

117. Viacom repeats and realleges every allegation contained in paragraphs 1 through 116 as if fully set forth.

118. By virtue of its use and promotion of the Ninja Turtles Trademarks, Viacom established valuable goodwill in its Ninja Turtles Trademarks as used in connection with the Authorized Franchise throughout the United States, including throughout the State of New Mexico, prior to Defendants' use of infringing marks in the Show.

119. The Ninja Turtles Trademarks are distinctive and have acquired secondary meaning. Consumers have come to recognize the Ninja Turtles Trademarks as the source of the Authorized Franchise sold and promoted under the Ninja Turtles Trademarks.

120. Defendants' adoption and use of infringing marks in connection with the Show is without authorization and is likely to deceive, confuse, and mislead consumers and the general public into believing that Defendants and their services emanate from, are authorized by and/or are in some manner affiliated with or endorsed by Viacom, when they are not.

121. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages.  The threatened harm to Viacom outweighs whatever cognizable harm the requested relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction

weighs in Viacom's favor.  Accordingly, Viacom is entitled to a permanent injunction prohibiting infringement of Viacom's trademarks pursuant to New Mexico law.

122. Upon information and belief, Defendants' conduct has been engaged in with a willful, wanton, or reckless disregard for Viacom's rights, so as to justify an award of punitive damages.

## FIFTH CAUSE OF ACTION

### New Mexico Trademark Dilution, N.M. Stat. Ann. § 57-3B-15

123. Viacom repeats and realleges every allegation contained in paragraphs 1 through 122 as if fully set forth.

124. The Ninja Turtles Trademarks are famous and distinctive marks in the State of New Mexico by virtue of their use and promotion in the state.   The extensive publicity and merchandising for the Authorized Franchise identified by the Ninja Turtles Trademarks have created strong, widespread recognition of the Ninja Turtles Trademarks in the State of New Mexico.

125. Upon information and belief, Defendants willfully and intentionally make use of Viacom's Ninja Turtles Trademarks as part of the Show for the purpose of trading on, appropriating, and wrongfully reaping the benefits of the goodwill and reputation that has attached to the Ninja Turtles Trademarks by reason of the substantial expenditure of time, money, and effort by Viacom.

126. Defendants commenced use of the infringing marks after Viacom's Ninja Turtles Trademarks had already become famous in the State of New Mexico.

127. The foregoing acts of Defendants dilute the distinctive quality of the Ninja Turtles Trademarks by lessening the capacity of Viacom's famous marks to identify and distinguish its goods and services, and have caused damage to Viacom's business reputation and goodwill in the

Ninja Turtles Trademarks, all in violation of the New Mexico Trademark Act, N.M. Stat. Ann. § 57-3B-15.

128. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages.  The threatened harm to Viacom outweighs whatever cognizable harm the requested relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction weighs in Viacom's favor.  Accordingly, Viacom is entitled to a permanent injunction prohibiting dilution of Viacom's trademarks pursuant to N.M. Stat. Ann. § 57-3B-15(b).

129. Defendants' dilution of the Ninja Turtles Trademarks has been willful and has caused and will continue to cause serious and irreparable injury to the reputation and goodwill of Viacom for which Viacom is entitled to the remedies set forth under N.M. Stat. Ann. § 57-3B-15(b).

## SIXTH CAUSE OF ACTION

**Violation of New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1,** *et seq.*

130. Viacom repeats and realleges every allegation contained in paragraphs 1 through 129 as if fully set forth.

131. By knowingly using Viacom's intellectual property in connection with the Show, Defendants engaged in unfair and deceptive trade practices in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.

132. Consumers who purchase tickets to Defendants' Show, believing that it is sponsored, associated with, or affiliated with Viacom, are deceived and misled or will likely be deceived and misled, thereby resulting in a loss of the goodwill in the Ninja Turtles Trademarks and creating confusion, thus irreparably injuring Viacom.

133. Defendants' Show and use of infringing intellectual property has caused and continues to cause confusion and misunderstanding as to its source, sponsorship, approval, and certification, as well as confusion and misunderstanding as to affiliation, connection, and association with and certification by Viacom.

134. Furthermore, Defendants' Show and use of infringing intellectual property also falsely represents that Defendants, and their goods and services, have a sponsorship, approval, status, affiliation, or connection with Viacom.

135. Defendants' Show and use of infringing intellectual property has disparaged and continues to disparage the goods, services, and business of Viacom by false and misleading representations, resulting in a material diminution in the value of Viacom's intellectual property.

136. Upon information and belief, Defendants willfully cause its Show to be advertised, offered, and performed to the immediate and irreparable damage of Viacom.

137. Defendants' actions constitute unfair and deceptive trade practices in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.

138. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Viacom great and irreparable injury that cannot be fully compensated or measured in money damages.  The threatened harm to Viacom outweighs whatever cognizable harm the requested relief would theoretically inflict, if any, upon Defendants, and the public interest of an injunction weighs in Viacom's favor.  Accordingly, Viacom is entitled to a permanent injunction prohibiting Defendants' unfair and deceptive trade practices related to Viacom's intellectual property pursuant to N.M. Stat. Ann. § 57-12-10.

139. Viacom is entitled to all available and applicable remedies provided for in N.M. Stat. Ann. § 57-12-10, including permanent injunctive relief, treble damages, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Viacom prays for a judgment as follows:

1. That Defendants, and their respective officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be permanently restrained and enjoined, pursuant to 17 U.S.C. § 502, 15 U.S.C. §§ 1116, 1125(c), and New Mexico state law, from:

   a. Directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of the Ninja Turtles Copyrighted Material, protected by the Copyright Act, whether now in existence or hereafter created;

   b. Directly or indirectly infringing Viacom's Ninja Turtles Trademarks or any mark that is confusingly similar thereto in any manner, including but not limited to advertising and performing any Shows that infringe such trademarks;

   c. Using in Defendants' business or in connection with the Show, any copy, reproduction, or colorable imitation of Viacom's trademarks that causes or is likely to cause dilution of Viacom's trademarks;

   d. Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a. through c.;

    e.   Secreting, destroying, altering, removing, or otherwise dealing with the Show or any books or records that may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, renting, advertising, promoting, or displaying of all unauthorized products that infringe any of the Ninja Turtles Properties; and

    f.   Doing any other act or thing that is likely to cause persons to believe that Defendants' goods, services, or commercial activities originate with, or are licensed, sponsored, or authorized by, Viacom.

2. That Defendants be ordered, pursuant to 17 U.S.C. § 504(c), to pay to Viacom statutory damages or, alternatively, at Viacom's election, pursuant to 17 U.S.C. § 504, to pay to Viacom actual damages plus Defendants' profits from infringement, as will be proven at trial;

3. That Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all costumes, records, signs, prints, packages, wrappers, receptacles, advertisements, and promotional materials related to the Shows;

4. That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and New Mexico law, to pay to Viacom all of their profits from the sale of the Shows, and that such profits be enhanced on the basis of Defendants' willful infringement of the Ninja Turtles Trademarks;

5. That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and New Mexico law, to pay to Viacom all damages sustained by Viacom as a result of Defendants' infringement of Viacom's Ninja Turtles Trademarks, and that such award be trebled on the basis of Defendants' willful infringement;

6. That Defendants be ordered, pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117(a), and New Mexico statutory and common law, to pay to Viacom its attorneys' fees and the costs and expenses of this action;

7. That Defendants be ordered, pursuant to New Mexico law, to pay to Viacom punitive damages in an amount to be determined by the Court;

8. That Defendants be ordered to report to this Court within thirty (30) days after a Permanent Injunction is entered to show their compliance with paragraphs 1 and 3 above;

9. That Viacom be awarded pre-judgment and post-judgment interest; and

10. That Viacom be granted such other and further relief as is just and proper.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: */s/ Jeremy K. Harrison*
Jennifer G. Anderson
Jeremy K. Harrison
Post Office Box 2168
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico  87103-2168
Telephone: 505.848.1800
jga@modrall.com
jkh@modrall.com

Susan J. Kohlmann (Pro Hac Vice Pending)
Alison I. Stein (Pro Hac Vice Pending)
Brittany R. Lamb (Pro Hac Vice Pending)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Telephone:  (212) 891-1690
Facsimile:  (212) 891-1699
SKohlmann@jenner.com
AStein@jenner.com
BLamb@jenner.com