THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VIACOM INTERNATIONAL INC.,

    Plaintiff,

v.

                          No. Civ. 18-112 JCH/KRS

MARK ANTHONY BACA and GUARDIAN
ANTI-BULLYING CAMPAIGN, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On June 22, 2018, Plaintiff Viacom International Inc. ("Viacom") filed a Motion for Default Judgment and Memorandum in Support Thereof (ECF No. 22). The Court, having considered the motion, exhibits, pleadings, declarations, relevant law, and being otherwise fully informed of the record, will grant the motion for default judgment.

### PROCEDURAL BACKGROUND

On March 22, 2018, Viacom filed a Motion for Substituted Service and Memorandum in Support of Same (ECF No. 12), setting forth the grounds for why constructive service should be permitted under NMRA 004. The Honorable Kevin R. Sweazea granted Viacom's motion for substituted service, ordering substituted service by a variety of means: email, service by publication in three different newspapers, service by first class mail to all known addresses, service by first-class mail on Defendant Baca's mother, service by first-class mail on Charla Hicks, and notice by text message to Defendants' previously used phone. *See* Order 1-2, ECF No. 14.

Viacom subsequently filed a notice of service by publication in the *Eastern New Mexico*

*News* on April 13, 2018, *see* Notice, ECF No. 15; notice of publication in the *Crestview News Bulletin* on April 18, 2018, *see* Notice, ECF No. 16; and notice of service by publication in the *Los Angeles Times* on April 13, 2018, *see* Notice, ECF No. 17. On May 15, 2018, Viacom filed a Certificate of Service Regarding Substituted Service (ECF No. 19), asserting it followed the Court's Order regarding service by email, publication, first-class mail, and text message. The next day Viacom filed a Motion for Clerk's Entry of Default (ECF No. 20). The Acting Clerk of the Court filed an Entry of Default (ECF No. 21) on May 17, 2018. Based on the record, the Court finds that Defendants were properly served.

Nevertheless, to date, Defendants have failed to answer or otherwise respond to the Complaint. The record indicates that Defendants have actual notice of this litigation. *See*, *e.g.*, Mot. for Clerk's Entry of Default, Ex. A, ECF No. 20-1 (response by text message from Defendant Baca on April 11, 2018, indicating receipt of text message in which Viacom notified him of this pending litigation). Because Defendants failed to answer or otherwise respond to the allegations made in the Complaint, they have admitted the factual allegations contained therein. *See Tripodi v. Welch*, 810 F.3d 761, 764-65 (10th Cir. 2016). The Court nevertheless must determine whether the well-pleaded facts state a claim upon which relief may be granted, because a party in default does not admit conclusions of law. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that default judgment was improper on claims that were barred or subject to dismissal under Rule 12(b)). In ruling on a motion for default judgment, courts should consider (1) jurisdiction, (2) liability, and (3) entitlement to the relief requested. *See SPFM, L.P. v. Felix*, SA-16-CV-00179-XR, 2016 WL 5854286 (W.D. Tex. Oct. 5, 2016) (and cited authority).

## JURISDICTION

This Court has federal question jurisdiction over the subject matter pursuant to 17 U.S.C.

§ 501 (Count I), 15 U.S.C. § 1125(a) (Count II), and 15 U.S.C. § 1125(c) (Count III). This Court has supplemental jurisdiction over the state-law claims (Counts IV, V, and VI) under 28 U.S.C. § 1367. Personal jurisdiction is proper in New Mexico. At the time of the filing of the Complaint, Defendant Mark Anthony Baca was residing in New Mexico and Defendant Guardian Anti-Bullying Campaign, Inc., ("Guardian") had its principal place of business in New Mexico. *See* Compl. ¶¶ 13-14, ECF No. 1. Defendant Baca is an officer, trustee, and/or director of Guardian. *Id.* ¶ 15. Venue is proper in this state and district. *See* 28 U.S.C. § 1391.

## LIABILITY

### I. Admitted and Undisputed Facts

Viacom is the owner of numerous copyrights and trademarks related to the *Teenage Mutant Ninja Turtles* ("Ninja Turtles"), and through its media franchise, Viacom has made the Ninja Turtles famous and distinctive throughout the world and in New Mexico through its high-quality professional television series, films, video games, toys, and other merchandise. *See* Compl. ¶¶ 1, 6, 25-33, 43, 88, 105, 124, ECF No. 1, & Ex. 7, ECF No. 1-8, & Ex. 8, ECF No. 1-9; Decl. of Andrew Hughes ¶¶ 8-15, 54, 57, ECF No. 27. The Ninja Turtles are adolescent anthropomorphic turtles named after Renaissance artists and trained in ninjutsu to fight crime. Decl. of Andrew Hughes ¶ 8, ECF No. 27. Viacom owns registered and unregistered trademarks related to the Ninja Turtles. Compl. ¶¶ 36, 88, 94, ECF No. 1, & Ex. 8, ECF No. 1-9; Decl. of Andrew Hughes ¶¶ 16, 57, ECF No. 27. The federal registrations for the Ninja Turtle Trademarks are in full force and effect, and many are incontestable. Compl. ¶ 37, ECF No. 1. Viacom and its predecessor in interest have continuously used the Ninja Turtle Trademarks from the registration date or earlier until the present, and Viacom has numerous license agreements for the Ninja Turtle Trademarks throughout the United States and world. *Id.* ¶¶ 38-39. The Ninja Turtle Trademarks are distinctive, have

acquired secondary meaning so the public associates them exclusively with Viacom, have become a symbol of Viacom, and have come to be known as source identifiers for high-quality, authentic Viacom-licensed consumer products. *Id.* ¶¶ 40-42, 88, 90-92, 107, 119. The design, configuration, conceptual qualities, and distinctive features of the Ninja Turtles copyrighted material, including the characters, are wholly original. *Id.* ¶ 34.

Viacom produces dramatic animated television series and feature films about the Ninja Turtles. *Id.* ¶¶ 30-32. Viacom also produces entertainment content in live events. *See id.* ¶ 23.

Defendants produce a "Ninja Turtles Live Action Parody" show (the "Show"), related marketing, and related advertising, but they do not have a license or other authorization to use any of Viacom's copyrights or trademarks. *See id.* ¶¶ 1, 7. The Show is based on the Ninja Turtles; the characters have the same names as Viacom's protected Ninja Turtle characters; the Show's plot points mimic those that appear in authorized Ninja Turtles storylines; the Show makes use of the Ninja Turtles' distinctive costumes that identify the Ninja Turtle characters; the Show's characters act in accordance with the Ninja Turtles' well-recognized personality traits, interact with one another and engage in the same activities as the Ninja Turtles in authorized programming; and at least two of the Shows made use of the unique catchphrases of the Ninja Turtle characters, such as "cowabunga." *See id.* ¶¶ 45-50; Decl. of Andrew Hughes ¶¶ 23-30, ECF No. 27. The Show is not a parody and provides no meaningful commentary upon or criticism of the Ninja Turtles; nor are the Ninja Turtle characters portrayed with irony or self-awareness to indicate a parodic element to the Show. Compl. ¶ 52, ECF No. 1; Decl. of Andrew Hughes ¶ 31, ECF No. 27. An anti-bullying message is not the focus of the Show. Compl. ¶ 53, ECF No. 1; Decl. of Andrew Hughes ¶ 32, ECF No. 27; Decl. of Steven Collins ¶ 6, ECF No. 26.

Defendant Baca sells merchandise with Ninja Turtle logos, although Defendants are not

licensed or authorized to sell it. *See* Compl. ¶¶ 7, 68, ECF No. 1; Decl. of Steven Collins ¶ 7, ECF No. 26. Defendants sell tickets to the Show and tickets for a greater price where ticketholders can meet actors dressed up in Ninja Turtle character costumes, who pose for photographs and sign autographs. Compl. ¶ 67, ECF No. 1; Decl. of Andrew Hughes ¶ 43, ECF No. 27. The Show is an amateur, low-quality production with non-professional actors and it infringes Viacom's copyrights and trademarks. *See* Compl. ¶ 105, ECF No. 1; Decl. of Andrew Hughes ¶¶ 33, 55, 58, ECF No. 27. Defendants have adopted and used unauthorized reproductions of one or more of the Ninja Turtle trademarks in connection with the advertising, sale, offering for sale, and/or distribution of goods in New Mexico and in interstate commerce for their own financial gain. Compl. ¶ 92, ECF No. 1. Defendants' unauthorized use of Plaintiff's famous marks occurred long after the Ninja Turtle trademarks became famous in New Mexico and elsewhere. *See id.* ¶¶ 109-10, 126.

Defendants knowingly, willfully, and confusingly made use of Viacom's well-established and famous trademarks and copyrights in the Ninja Turtles, with the intent to trade in on the goodwill associated with Viacom's copyrights and trademarks. *See id.* ¶¶ 6-7, 9-10. Over the past few years, Viacom made repeated demands that Defendants cease their infringement. *See id.* ¶¶ 2-3. Viacom first learned of the Show in 2015 and contacted Defendants around August 2015 to request they cease and desist using all Ninja Turtle trademarks and copyrighted materials. *See* Decl. of Andrew Hughes ¶¶ 18-19, ECF No. 27. Viacom again contacted Defendants in November 2016 because of continued infringement by Defendants. *Id.* ¶ 20. Defendants acknowledged their infringement in January 2017 and again in January 2018, both times Defendants agreed to cease the infringing conduct, but they continued to infringe Viacom's copyrights and trademarks by performing the Show. *See* Compl. ¶¶ 2-5, 61-65 & Compl. Ex. 6, ECF No. 1-7. *See also* Decl. of Steven Collins ¶¶ 4-5, ECF No. 26; Decl. of Andrew Hughes ¶¶ 20, 34-41, ECF No. 27.

The Show injures Viacom's reputation and goodwill, because there is a likelihood that consumers have been and will be confused as to the source or sponsorship of Defendants' Show, believing it to be affiliated with Viacom when it is not. Decl. of Andrew Hughes ¶ 46, ECF No. 27. On February 5, 2018, Defendant Baca responded by text message to counsel for Viacom, stating he may "wear my suits all over LA" while "working my weapons and doing flips" and taking "free pictures with eve[r]yone." *Id.* ¶ 48 & Ex. A, ECF No. 27-1. In an email to a legal assistant to Viacom's legal counsel dated June 12, 2018, Defendant Baca acknowledged Viacom's lawsuit against him, asserted that Viacom's assertions were untrue, and threatened to release footage from his Parody show to show the American people Viacom's true colors. Decl. of Andrew Hughes ¶ 49, ECF No. 27 & Ex. B, ECF No. 27-2. Defendant Baca wrote another email to the same legal assistant on July 10, 2018, stating that he was about to launch his whole show online. Decl. of Andrew Hughes ¶ 50, ECF No. 27 & Ex. C, ECF No. 27-3.

## II. Claims

### A. Copyright Infringement, 17 U.S.C. § 501 (Count I)

"To state a claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292 (10th Cir. 2014) (internal quotations omitted). To prove the second element, Plaintiff must show that Defendants copied its work and the elements copied were protected. *TransWestern Pub. Co. LP v. Multimedia Marketing Assocs., Inc.*, 133 F.3d 773, 775 (10th Cir. 1998). Given the admitted facts, Plaintiff has met its burden to show ownership of valid copyrights for the Ninja Turtles and that the material is original. The record also establishes that Defendants have copied constituent elements of the work – such as characters, costumes, catchphrases, and storylines -- as part of their Show. Plaintiff is therefore entitled to default

judgment on Count I. *See Blehm v. Jacobs*, 702 F.3d 1193, 1205 (10th Cir. 2012) (explaining that cartoon works using even a modicum of creativity are protected by copyright and that question is whether protected expression is substantially similar to allegedly infringing works).

### B. Federal Trademark Infringement, 15 U.S.C. § 1125(a) (Count II)

To state a trademark infringement claim under the Lanham Act, a plaintiff must allege facts showing that (1) its mark is protectable, and (2) the defendant's use of an identical or similar mark in commerce is likely to cause confusion among consumers. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004). A mark is protectable if it is capable of distinguishing the products it marks from those of others. *Id.* at 1216. Courts look to the following factors to determine whether there is a "likelihood of confusion": (1) the degree of similarity between the competing marks; (2) the intent of the defendant in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by consumers; and (6) the strength or weakness of the marks. *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014); *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985).

In light of the undisputed facts, the Court finds that the Ninja Turtles mark is protectable and that Defendants' Show uses the Ninja Turtles mark or a similar mark in commerce that is likely to cause confusion among consumers that the source of the show is from Viacom. Plaintiff is therefore entitled to default judgment on Count II.

### C. Federal Trademark Dilution, 15 U.S.C. § 1125(c) (Count III) and New Mexico Trademark Dilution, N.M. Stat. Ann. § 57-3B-15 (Count V)

The Lanham Act also provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark …

in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark ...." 15 U.S.C. § 1125(c). The Lanham Act defines a "famous" mark as one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "Dilution by blurring" occurs when the similarity between the mark and famous mark impairs the distinctiveness of the famous mark. *Id.* § 1125(c)(2)(B). To determine dilution by blurring, courts consider a number of factors including (i) the degree of similarity between marks; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the famous mark's owner is engaging in substantially exclusive use of the mark; (4) degree of recognition of the famous mark; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any actual association between the marks. *Id.* "Dilution by tarnishment" under the Lanham Act is association arising from the similarity between a mark and a famous mark that harms the reputation of the famous mark. 15 U.S.C. § 1125(c)(2)(C). "Tarnishment occurs where a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (internal quotations omitted). New Mexico's trademark dilution statute is virtually identical to the federal statute and its interpretation tracks federal law. *Navajo Nation v. Urban Outfitters, Inc.*, Civ. No. 12-195 BB/LAM, 2016 WL 3475342, at *5 (D.N.M. May 13, 2016) (and cited cases).

The undisputed record shows the Ninja Turtle marks are distinctive, famous, of high quality, and that Defendants' Show uses marks so similar to Viacom's famous mark as to impair the distinctiveness of the famous mark and to harm the reputation of the famous mark by linking

it to a Show of inferior quality. Plaintiff is thus entitled to default judgment on Counts III and V.

### D. New Mexico Common Law Trademark Infringement (Count IV)

Plaintiff asserts a claim for New Mexico common law trademark infringement in Count IV of its Complaint, but its motion for default judgment is notably silent on this claim. Plaintiff has not expressly moved for default judgment on trademark infringement under New Mexico common law. *See*, *e.g.*, Pl.'s Mot. 17, ECF No. 22 (moving for default judgment "on each of the claims set forth above—namely, federal copyright infringement, federal trademark infringement, federal trademark dilution, trademark dilution under New Mexico law, and violation of the New Mexico Unfair Practices Act"). At least one district court has expressed doubt as to whether the common-law cause of action for trademark infringement survived the adoption of the New Mexico Trademark Act. *See Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 708 F.Supp.2d 1209, 1249-50 (D.N.M. 2010). The Court need not decide the issue because Plaintiff has not moved for default judgment on this claim. **Given the posture of this case and the Court's ruling herein, Plaintiff must file with the Court within five days of entry of this Memorandum Opinion and Order a short brief setting forth the status of Count IV.**

### E. Violation of New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12-1, *et seq*. (Count VI)

The NMUPA makes unlawful "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3. The NMUPA defines an "unfair or deceptive trade practice" as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale . . . of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person. . . ." *Id.* § 57-12-2(D). Section 57-12-10(B) permits any "person who suffers any loss of money or property" to bring a claim. "[A]

9

business competitor may sue under the UPA provided that the conduct alleged involves trade practices that either implicate consumer protection concerns or are addressed to the market generally." *Gandydancer, LLC v. Rock House CGM, LLC*, __ P.3d __, 2018 WL 3640370 (N.M. Ct. App. July 30, 2018).

Viacom has established harm to itself from the loss of goodwill caused by Defendants' misrepresentations that resulted in confusion to consumers who purchased tickets to the Show as to the source, affiliation, and sponsorship of the Show. *See* Compl. ¶¶ 132-36, ECF No. 1. Consumers who purchased tickets to the Show were likely misled by Defendants knowingly through oral, written and/or visual descriptions or representations made in connection with the sale of tickets to the Show into believing that Viacom is a source or sponsor of the Show when in fact it is not. *See id.* The record reflects that the sale of tickets to the Show was a regular course of Defendants' trade and that the conduct involved implicates consumer protection concerns addressed to the market generally. Consequently, Plaintiff is entitled to default judgment on the NMUPA claim in Count VI.

## PERMANENT INJUNCTION

Although Plaintiff sought in the Complaint relief in the form of damages in addition to equitable relief, Plaintiff only requests that this Court enter a permanent injunction against Defendants to enjoin the unlawful conduct. *See* Pl.'s Mot. 15, ECF No. 22. Although a default judgment establishes liability, a plaintiff who seeks an injunction has the burden of persuasion to demonstrate it is entitled to the equitable remedy sought and that remedies available at law, such as monetary damages, are inadequate to compensate for that injury. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)). The causes of action upon which Plaintiff is entitled to

default judgment permit injunctive relief. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction … may … grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."); 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction … shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."); N.M. Stat. Ann. § 57-12-10(A) ("A person likely to be damaged by an unfair or deceptive trade practice … of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."). A plaintiff seeking a permanent injunction must satisfy the following four-factor test: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

As to the first factor, for all the reasons set forth *supra*, Plaintiff has shown actual success on the merits. Turning to the necessity of an injunction, Plaintiff has shown that Defendants, despite receiving cease-and-desist letters and acknowledging their infringement, continued to perform the Show. The Court further finds that, due to Plaintiff's inability to control the nature and quality of Defendants' Show, Defendants' use of the Ninja Turtle trademarks, marks confusingly similar thereto, and of the copyrights is likely to cause irreparable harm to Plaintiff's reputation and valuable goodwill unless Defendant is immediately restrained and permanently enjoined. The remedies at law are inadequate to protect Plaintiff's interest in its trademarks and copyrights caused by Defendants' repeated and continued use of the Ninja Turtle trademarks or

marks confusingly similar thereto. *See Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006) ("'[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the defendant's continuing infringement.'") (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1170 (9th Cir. 1988)).

The balance of hardships also favors Plaintiff. The threatened injury to Plaintiff's goodwill caused by Defendants' infringing and unlawful acts outweighs any injury an injunction may cause Defendants. Defendants' open and intentional appropriation of Plaintiff's marks and copyrights causes minimal harm to Defendants who have no legal right to the marks and who have been repeatedly warned of the infringing unlawful conduct. *See General Motors Corp. v. Urban Gorilla, L.L.C.*, 500 F.3d 1222, 1229 (10th Cir. 2007) ("We agree that when the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement.") (citations and internal quotations omitted). Moreover, because Defendants chose not to present any defense in this case, the record is silent as to any harm that it would cause Defendants to limit the use in their Show of the Ninja Turtles marks and copyrights.

Finally, as the public interest factor, the undisputed record is that the anti-bullying theme is a minimal part of the Show. The public has an interest in the maintenance of product quality and not being misled or confused. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985) (explaining that Congress enacted the Lanham Act in 1946 to provide national protection for trademarks used in interstate and foreign commerce to promote competition and the maintenance of product quality). The fourth factor thus favors the issuance of an injunction.

Accordingly, Plaintiff has established the four factors required for issuance of a permanent injunction. For all the foregoing reasons, the Court will grant Plaintiff injunctive relief to enjoin

Defendants' unlawful conduct.

The Court has reviewed the proposed Final Judgment submitted by Viacom. The Court finds that Paragraphs 1-4 are reasonable, necessary, and supported by the record. The Court finds the language of Paragraph 5 confusing and would create uncertainty in its enforcement. Nor is the Court convinced of the reasonableness of the scope and open-ended time-period for the prohibition related to secreting, destroying, altering, or removing books and records dealing with the Show. The Court also finds Paragraph 6 broad and not sufficiently specific to the infringing conduct at issue in this case. The Court is therefore inclined to issue a separate Final Judgment setting forth the requested relief in Paragraphs 1-4 of the proposed Final Judgment. Within five days of entry of this Memorandum Opinion and Order, Plaintiff may file objections to the Court's proposal or grounds in support of the requested relief in Paragraphs 5-6 for the Court's consideration before entering Final Judgment.

Finally, the Court finds that the record in this case is sufficient to allow it to rule on the permanent injunction request without the need for a hearing in the matter. Before vacating the hearing currently set in this case, however, the Court requests that Plaintiff inform the Court of its position on the necessity of a hearing on the permanent injunction.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's Motion for Default Judgment and Memorandum in Support Thereof (**ECF No. 22**) is **GRANTED**.

2. Plaintiff is entitled to default judgment in its favor against Defendants as to Counts I, II, III, V, and VI.

3. Plaintiff must file with the Court **within five days** of the filing of this Memorandum Opinion and Order a brief setting forth the status of Count IV, any argument or support

related to Paragraphs 5 and 6 in its proposed final judgment, and its position on whether a hearing on the permanent injunction is necessary.

_____
**UNITED STATES DISTRICT JUDGE**